**JACKSON BREWING COMPANY v UNDERWRITERS SALVAGE CORP.**

Ohio Appeals, 1st Dist, Hamilton Co

No 6039. Decided Dec 8, 1941

Thos L. Pogue, Jr., Cincinnati, and J. A. Culbertson, Cincinnati, for appellee.

Harmon, Colston, Goldsmith & Hoadly, Cincinnati, and J. Louis Kohl, Cincinnati, for appellant.

## OPINION

By MATTHEWS, J.

There was a collision between two motor vehicles, one operated by an agent of plaintiff and the other operated by agents of the defendant, in a public street intersection in the City of Cincinnati. Each vehicle was damaged. The plaintiff sued to recover on account of the damages to its vehicle, and the defendant filed a cross-petition seeking to recover on account of the damage to its vehicle.

The jury returned a verdict denying recovery to either, and judgment was entered on the verdict.

The defendant appealed from the judgment in favor of the plaintiff upon its cross-petition.

The plaintiff was operating a motor truck and was engaged in its private business at the time of the collision.

The defendant was and is a corporation not for profit, organized for the purpose of discovering and preventing fires and of saving property and life from conflagration. At the time of the collision the defendant was using its motor truck in responding to a call to a fire.

It is the contention of the defendant-appellant that there is no evidence of negligence on its part, and that the collision was caused solely through the negligence of the plaintiff-appellee in failing to yield the right of way at the intersection.

The relative rights under the law and municipal ordinances of an operator of a private non-salvage corps vehicle and the operator of a salvage corps vehicle proceeding to a fire are involved in the problem thus presented.

The applicable ordinances are §74-1a 14, which provides:

"Emergency Vehicle.

"Any vehicle of the Police Force, the Fire Force, or the Salvage Corps, and such other vehicles used by municipal or other public authorities or by hospitals or public service corporations as the City Manager may designate."

And, §74-73:

"Authorized emergency vehicles being operated in emergencies shall have the right of way over all other traffic. Upon the approaching of any authorized emergency vehicle or vehicles giving audible signal by bell, siren, or exhaust whistle, the operator of every other vehicle shall immediately drive to a position as near as possible and parallel to the edge or curb of the highway, clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle or vehicles shall have passed, unless otherwise directed by a police officer * * *

"The operator of every street car shall immediately stop such car clear of any intersection and keep it in such position until the authorized emergency vehicle or vehicles shall have passed, unless otherwise directed by a police officer. This section shall not relieve the operator of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect him from the consequence of an arbitrary exercise of such right of way."

And §74-76:

"The operator of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection. When two vehicles enter, or are about to enter an intersection at approximately the same time, the operator of the vehicle on the left shall yield the right of way to the vehicle on the right."

And, finally, section 74-3:

"The provisions of this chapter regulating the movement, parking and standing of vehicles shall not apply to an authorized emergency vehicle while the operator thereof is operating such vehicle in an emergency in the performance of his duties; provided, however, that the operator of such emergency vehicle, when driving against traffic on a one-way street, driving on the wrong side of the road, disregarding a traffic light or 'Stop' sign or otherwise disregarding a driving regulation, shall have his vehicle under full control."

It is true that these sections give salvage corps vehicles the right of way over all private non-salvage corps vehicles.

But it is equally clear that the operators of salvage corps vehicles are not thereby relieved of all duty toward other users of the streets. These ordinances were enacted in recognition of the humanitarian purpose to be served in the emergency requiring haste, but the limitations were imposed in recognition that ruthless haste might result in as great inhumanity as would be relieved by the arrival later of the salvage corps at the point of emergency.

It is also clear that by section 74-3 a higher duty is imposed upon a salvage corps operating a vehicle contrary to the traffic rules applicable to ordinary vehicles. If the salvage corps vehicle is being operated against traffic on a one way street, or on the wrong side of the road, or against a traffic light or stop sign, or otherwise in disregard of traffic regulations ordinarily applicable, there is greater danger and as a result the municipality deemed it in the public safety to require a higher degree of care on the part of the salvage corps operator under such circumstances. In the absence of the provisions of the ordinances such conduct would be a punishable offense and negligence as a matter of law. As a condition to lifting this ban, the city requires that the salvage corps vehicle shall be under "full control" while being so operated.

In Collins Baking Co. v Wicher, 142 So. (Miss.) 8, at 10, it is said:

"We are of the opinion that by control of a car is meant that the driver shall have the ability to stop readily and easily."

In Carruthers v Campbell, (195 Io. 390, 192 N. W. 138) 28 A. L. R. 949, the court said that ability to stop instantly under any and all circumstances was not a necessary part of having an automobile under control, and at 951 and 952 defined the phrase "under-control" as follows: "A car is 'under control' within the meaning of the law if it is moving at such a rate and the driver has the mechanism and power under such control, that it can be brought to a stop with a reasonable degree of celerity." In the annotation are listed cases in which the rule requiring an automobile to be under control has been applied to different states of facts.

The intersection in which this collision occurred was controlled by a traffic light. The plaintiff entered the intersection when the light indicated that he had the right of way as against ordinary traffic. The defendant entered the intersection with knowledge that its right was exceptional and contrary to normal expectation. In exercising this exceptional right the defendant was required to have its vehicle under "full control" because of the increased hazard resulting from the operation contrary to the usual rule.

Without undertaking to state a precise definition of "full control", it is manifest that it indicates a greater degree than the word "control" standing alone.

This collision occurred in the day time and those approaching the intersection could see others approaching at right angle on other intersecting street long before reaching the point of collision.

There is abundant evidence that the defendant proceeded across the intersecting street to within five feet of the opposite curb before the two trucks came together. The defendant's operator saw the plaintiff's truck before entering the intersection, and notwithstanding his efforts to stop he proceeded almost across the intersecting street.

The ordinance required that the salvage corps truck should be under full control when entering the intersection against the traffic light. It requires no precise definition of "full control" to conclude that under the circumstances of this case this salvage corps truck was not under the control required by the ordinance.

We are not required on this review to consider whether the plaintiff was exercising due care. There being sufficient evidence that the defendant failed to exercise reasonable care, it could not recover on its cross-petition in any event. The jury so found, and this court would not be justified in disturbing its finding.

Finding no prejudicial error, the judgment is affirmed.

HAMILTON, PJ. & ROSS, J., concur.